UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN CORBETT,

                              Plaintiff,

                    -v.-

CITY OF NEW YORK and
THOMAS M. PRASSO,

                              Defendants.

18 Civ. 7022 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

In December 2015, Plaintiff applied for a permit to carry a concealed handgun in New York State. After the License Division (the "License Division") of the New York City Police Department (the "NYPD") denied his application based on his failures (i) to complete part of the standard background questionnaire and (ii) to demonstrate eligibility for the permit, Plaintiff unsuccessfully challenged the decision both within the NYPD and in state court. Proceeding *pro se*, Plaintiff now brings this action against the City of New York and Thomas M. Prasso, the Director of the License Division (collectively, "Defendants"), seeking declaratory and injunctive relief. Plaintiff alleges, as he did in his state court proceedings, that both the requirements and the administration of the permit application process in New York, as circumscribed by New York State statutes and New York City rules, violate the Second Amendment. In addition, Plaintiff asserts violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Defendants now

move to dismiss the Complaint.  For the reasons set forth in the remainder of this Opinion, the Court grants Defendants' motion.

## BACKGROUND[1]

### A.   Factual Background

#### 1.   New York's Handgun Licensing Scheme

New York State regulates the possession of firearms through a licensing scheme, *see* New York Penal Law ("NYPL") § 400.00, and several criminal statutes, *see id.* §§ 265.01-265.04, 265.20(a)(3).  New York City has also promulgated rules concerning the issuance of licenses and permits for the possession and use of handguns.  *See generally* Rules of the City of New York ("RCNY"), tit. 38.  As relevant to this litigation, without the relevant handgun permit from the NYPD, it is a crime to keep or carry a handgun anywhere in New York City.  *See generally* NYPL Art. 265.  An applicant may submit a

---

[1]     This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)).  In addition, the Court considers several documents that are attached to the Complaint, incorporated by reference, or integral to the Complaint: (i) Plaintiff's Petition in the New York state action (Declaration of Annette M. Lalic ("Lalic Decl." (Dkt. #13)), Ex. B); (ii) the Supreme Court decision in the state action (*id.*, Ex. E); (iii) Plaintiff's December 22, 2015 handgun license application (*id.*, Ex. J); and (iv) Plaintiff's appeal of the denial of his application (*id.*, Ex. N).  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the [pleading] 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).  Finally, the Court refers to the transcript of the hearing it held on October 3, 2018 ("Tr." (Dkt. #10)), at which certain factual assertions were made by Plaintiff.

For ease of reference, the Court refers to the parties' briefing as follows:  Defendants' Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #14); Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #15); and Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #16).

permit for several types of handgun licenses, including a "premise license," which authorizes the holder to possess a handgun in her home or place of business for purposes of self-defense. *Id.* § 400.00(2)(a)-(b).

While a "premise license" is not difficult to come by, *see People* v. *Hughes*, 22 N.Y.3d 44, 50 (2013), Plaintiff applied for a "business carry" license without any restrictions, more commonly referred to as a "concealed carry" permit (Compl. ¶ 15). A "business carry" license allows the holder to carry a concealed handgun, on his person, in public places, whether for businesses or other purposes, "when proper cause exists for the issuance [of the license]." NYPL § 400.00(2)(f).

Regardless of the license applied for, "[e]very application triggers a local investigation by police into the applicant's mental health history, criminal history, [and] moral character." *Kachalsky* v. *Cty. of Westchester*, 701 F.3d 81, 87 (2d Cir. 2012). To be eligible for a permit, an applicant must, among other things, disclose certain personal background information, be at least 21 years old, "possess good moral character," not have any serious criminal history, and not be "an unlawful user of or addicted to any controlled substance." NYPL § 400.00(1)(a-n).

In addition to these general qualifications, individuals applying for a "business carry" license must also show that there is "proper cause" for the issuance of a permit. NYPL § 400.00(2)(f). To establish "proper cause," "an applicant must demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same

profession." *Kachalsky*, 701 F.3d at 86 (citation omitted). Upon completion of the licensing investigation, the results are reported to the licensing officer, NYPL § 400.00(4), who has "has broad discretion to decide whether to issue a license," *Kaplan* v. *Bratton*, 673 N.Y.S.2d 66, 68 (1st Dep't 1998).

### 2. Plaintiff's Permit Application

As noted, in December 2015, Plaintiff applied with the NYPD for a "business carry" license. (Compl. ¶¶ 15, 16). Plaintiff declined to answer three questions on the application. (*Id.* at ¶ 29). Those questions, Questions 11, 12, and 13 (the "Application Questions"), asked whether Plaintiff had ever:

> 11. Been discharged from employment?
>
> 12. Used narcotics or tranquilizers? List doctor's name, address, telephone number, in explanation.
>
> 13. Been subpoenaed to, or testified at, a hearing or inquiry conducted by any executive, legislative or judicial body?

(*Id.*).

In lieu of checking either the "yes" or "no" boxes accompanying each question, Plaintiff attached an addendum, which provided the following explanation:

> I refuse to answer questions 11, 12, and 13 because they are entirely irrelevant as to whether I am qualified to carry a handgun. Additionally, I refuse to answer question 12 because a) nearly every adult in the U.S. has been prescribed, at some point, a narcotic pain reliever or tranquilizer, and therefore I believe this question is used as subterfuge to allow the NYPD to unlawfully deny licenses, and [b]) the NYPD does not have the qualifications, nor any appropriate procedure, to determine if the usage of such medication is an indicator that a license should be granted.

(Compl. ¶ 30).

In addition, as required for "business carry" applicants, Plaintiff submitted a "Letter of Necessity." (Compl. ¶ 18). Plaintiff was required to provide "a detailed description of [his] employment and an explanation of why the employment requires the carrying of a concealed handgun." (Lalic Decl., Ex. J). In response, Plaintiff wrote that he needs to carry a concealed handgun because he "conducts business as a civil rights advocate," and "[i]n order to exercise his civil rights fully, he needs a carry license." (*Id.*).

On December 24, 2015, NYPD Officer Thomas Barberio contacted Plaintiff to request additional documents and to schedule an in-person interview, a mandatory part of the application review process. (Compl. ¶ 20). During the interview on April 7, 2016, Officer Barberio informed Plaintiff that another officer would be taking over the resolution of Plaintiff's application. (*Id.* at ¶ 25). That officer, Officer Barberio advised, was unlikely to grant Plaintiff's application because Plaintiff had failed to demonstrate "proper cause." (*Id.*).

On April 18, 2016, Plaintiff received a letter, signed by NYPD Deputy Inspector Michael Endall, informing Plaintiff that his application had been denied. (Compl. ¶¶ 26, 29). The letter cited two reasons for the denial. (*Id.* at ¶ 29). *First*, Plaintiff had not answered the Application Questions, and therefore had not completed the application form, as required by 38 RCNY § 5-

05(a). (*Id.*). *Second,* Plaintiff had failed to demonstrate "proper cause," as required by 38 RCNY § 5-03. (*Id.*).

**B.    Procedural Background**

On May 6, 2019, Plaintiff appealed the denial of his permit application to the NYPD's Appeal Unit. (Compl. ¶ 34; Lalic Decl., Ex. N). Plaintiff challenged the constitutionality of New York's proper cause requirement, as well as the application questions. (Lalic Decl., Ex. N). Plaintiff acknowledged that the Second Circuit had upheld the constitutionality of New York's proper cause requirement in *Kachalsky* v. *County of Westchester*, but noted that the Seventh and Ninth Circuits "have disagreed" with *Kachalsky.* (*Id.*). The NYPD denied his appeal in May 2016. (Compl. ¶ 35).

Plaintiff then commenced an Article 78 proceeding in New York State Supreme Court, New York County, against the City of New York and Defendant Prasso, seeking to reverse the NYPD's decision. (Lalic Decl., Ex. B).[2] Plaintiff reiterated his claims that the proper cause requirement and Application Questions did not pass constitutional muster. (*Id.*). The Supreme Court found that Plaintiff's refusal to complete the permit application, as well as his failure to demonstrate proper cause to carry a concealed weapon, provided a rational basis to deny his application, and rejected Plaintiff's constitutional challenges to each provision. (*Id.*, Ex. E). On April 3, 2018, the First Department affirmed the Supreme Court's decision. *See Corbett* v. *City of New York*, 73 N.Y.S.3d

---

[2]    As discussed further *infra*, Plaintiff in fact brought a "hybrid" proceeding, seeking an appeal of the NYPD's decision and declaratory relief.

568, 569-70 (1st Dep't) ("*Corbett I*"), *leave to appeal denied*, 31 N.Y.3d 913 (2018).

Shortly thereafter, on August 6, 2018, Plaintiff filed his Complaint in this action, seeking various forms of declaratory and injunctive relief, but no claims for damages.  (Dkt. #1).  On August 27, 2018, Defendants requested leave to file a motion to dismiss.  (Dkt. #7).  On October 3, 2018, the Court held a pre-motion conference and set a briefing schedule for Defendants' motion to dismiss.  (Dkt. #10).  Defendants moved to dismiss the Complaint on November 2, 2018.  (Dkt. #12-14).  Plaintiff filed an opposition brief on November 26, 2018.  (Dkt. #15).  This motion became fully briefed when Defendants filed their reply brief on December 10, 2019.  (Dkt. #16).

## DISCUSSION

### A.    Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In situations involving a *pro se* plaintiff, the Court "afford[s] [the plaintiff] a special solicitude[,]" and liberally construes pleadings and motion papers to raise the strongest claims they can support. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court is to read Plaintiff's "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v.

*United States*, 478 F.3d 489, 491 (2d Cir. 2007)).  However, the Second Circuit has recognized that "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented."  *Tracy*, 623 F.3d at 102.  "The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all."  *Id.*

Plaintiff graduated from law school in the fall of 2018 and notified the Court of his intention to take the California Bar Examination in February 2019.  (Compl. 12 n.9; *see also* Lalic Decl., Ex. J (stating that he "conducts business as a civil rights advocate")).  In light of the fact that the Court has not yet received confirmation that Plaintiff has been admitted to the California Bar, the Court, out of an abundance of caution, will afford Plaintiff the ordinary amount of solicitude due to *pro se* plaintiffs.  *Cf. Davidson* v. *Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (lessening the degree of solicitude for non-lawyer plaintiff "who is quite familiar with the legal system and with pleading requirements").

## B.      Plaintiff's Action Is Barred by Principles of *Res Judicata*

Defendants' primary argument is that the Complaint should be dismissed on *res judicata* grounds.  As set forth herein, the Court agrees.

### 1.      *Res Judicata* Generally

The doctrine of *res judicata*, also known as claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Maharaj* v. *Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting

*Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981)).  In other words, "the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." *Id.* (internal quotation marks omitted); *see generally Soules* v. *Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018).

The Second Circuit has instructed that "the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj*, 128 F.3d at 97.  Four requirements are necessary for res judicata to apply to a later litigation.  The earlier decision must have been "[i] a final judgment on the merits, [ii] by a court of competent jurisdiction, [iii] in a case involving the same parties or their privies, and [iv] involving the same cause of action." *Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012) (quoting *In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011)).  "Under New York's transactional approach to the rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Josey* v. *Goord*, 9 N.Y.3d 386, 389-90 (2007) (quoting *O'Brien* v. *City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

## 2.    Plaintiff's Claim Are Precluded

Defendants argue that Plaintiff's claims in the instant action are precluded by the adverse judgment in the Article 78 proceeding. (*See* Def. Br. 5-7). In determining whether Plaintiff is foreclosed from bringing his current claims, the Court must give the same preclusive effect to the state court judgment as would be given in New York, the state in which it was rendered. *See Migra* v. *Warren City School District Bd. of Educ.*, 465 U.S. 75, 81 (1984). In consequence, the Court applies New York's broad transactional approach to *res judicata. See Davidson* v. *Capuano*, 792 F.2d 275, 278 (2d Cir. 1986). It begins with the proposition that a state court judgment in an Article 78 proceeding has preclusive effect on subsequent federal claims for declaratory and injunctive relief when those claims are predicated on the same transaction out of which the first state action arose. *See id.*

The parties do not dispute that Plaintiff's Article 78 proceeding and the present action are based on the same underlying facts. In both actions, Plaintiff sought relief based on the denial of his application for a handgun permit. In point of fact, Plaintiff reproduced the factual allegations in his Article 78 petition nearly verbatim in the instant Complaint. (*Compare* Lalic Decl., Ex. B, *with* Compl.). What is more, Plaintiff's Second Amendment claims in Counts Two and Three of the instant Complaint are substantially similar to the Second Amendment issues raised at the state court level. (*See* Compl. ¶¶ 57-67). *See generally Corbett I*, 73 N.Y.S.3d 568. To the extent the Complaint raises new claims — specifically, violations of the Due Process and

11

Equal Protection Clauses of the Fourteenth Amendment — those claims could have been raised in the prior litigation and are therefore also barred by the doctrine of *res judicata*. *See Monahan* v. *New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) ("The doctrine of *res judicata,* or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (internal citations and quotations omitted)).

Plaintiff argues that an exception to the doctrine of *res judicata*, specific to Article 78 proceedings, applies in this case. (*See* Pl. Opp. 2-7). It is well settled that *res judicata* may not apply if "the initial forum did not have the power to grant the relief sought in the subsequent forum[.]" *Giakoumelos* v. *Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996). From this, Plaintiff argues that because Article 78 courts "do not have authority to address constitutional issues or declare laws unconstitutional," his claims could not have been raised in the prior action. (Pl. Opp. 6). Therefore, he claims, he is entitled to bring them in the instant action. (*Id.*).

Plaintiff is not correct: "[C]onstitutional issues can be decided in Article 78 proceedings." *Hellenic Am. Neighborhood Action Comm.* v. *City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). In particular, an Article 78 proceeding is an appropriate forum for determining whether a statute is unconstitutional as applied to the petitioner. *See, e.g., Gargiul* v. *Tompkins*, 790 F.2d 265, 272 (2d Cir. 1986). It is true, however, that New York law generally does not allow a party in an Article 78 proceeding to bring a challenge alleging that a regulation

is unconstitutional on its face. *See Hachamovitch* v. *DeBuono*, 159 F.3d 687, 695 (2d Cir. 1998). Presumably for this reason, Plaintiff argues for the first time in his opposition brief that he is in fact bringing a facial challenge to New York's permitting scheme. (*See* Pl. Opp. 2-7).

Plaintiff's attempt to elude the doctrine of *res judicata* fails for two reasons. *First*, Plaintiff's state court case fell within an exception to the general bar on addressing constitutional challenges in Article 78 proceedings. That is, Plaintiff initially brought a "hybrid" Article 78 action seeking both Article 78 relief and declaratory judgment. (Tr. 3:20-23; Lalic Decl., Ex. B). As a result, the state court could have heard Plaintiff's claim that the relevant statutes and regulations are facially unconstitutional. *See Parker* v. *Corbisiero*, 825 F. Supp. 49, 55 (S.D.N.Y. 1993) (finding that "a claim regarding a statute's general constitutionality *can* be heard by the court holding the Article 78 proceeding by simply treating the proceeding as a declaratory judgment action" (emphasis in original)). More to the point, not only was the relief sought *available* to Plaintiff, but Plaintiff actually *did* seek a judgment declaring the challenged regulations "facially unconstitutional." (*See* Lalic Decl., Ex. B). For that reason, the Article 78 action has a preclusive effect on this Court.

In response, Plaintiff argues that, while he did bring a "hybrid" petition, "[a]ll of the claims relevant here were brought exclusively under Article 78" (Pl. Opp. 6 n.2), and thus the state court was "technically without authority" to hear his facial constitutional challenge (*id.* at 7). Although the Court does not believe that the arguments have merit, it need not address them in detail

because the instant action is precluded for another reason: Despite Plaintiff's assertions to the contrary in his opposition brief, the Complaint here does not allege a facial constitutional challenge.

When considering this issue, the Court finds persuasive the reasoning of then-District Judge Denny Chin in the case of *Karamoko* v. *New York City Housing Authority*, 170 F. Supp. 2d 372 (S.D.N.Y. 2001). *Karamoko* concerned allegations that the New York City Housing Authority violated the mentally disabled plaintiff's constitutional rights when they terminated her tenancy. *See Karamoko*, 170 F. Supp. 2d at 375-76. The *Karamoko* plaintiff commenced an Article 78 proceeding, prior to initiating a case in federal district court. *See id.* When the *Karamoko* defendants moved to dismiss on the grounds that the plaintiff's claims were barred by *res judicata* in light of the Article 78 proceeding, the plaintiff asserted that her claims at the federal level amounted to a facial challenge. *See id.* at 378.

Judge Chin rejected the plaintiff's argument for reasons that are transferable to the instant case. *First*, he observed that "[e]ach request for relief in the complaint refers solely to Plaintiff, rather than to [handgun permit applicants] in general." *Karamoko*, 170 F. Supp. 2d at 378. *Second*, he found that "each cause of action relates specifically to the alleged violations of plaintiff's rights." *Id.* So too here. In Plaintiff's Article 78 petition, the request for relief asked the court to find the challenged regulation "facially unconstitutional." (Lalic Decl., Ex. B at 11-14). But in the instant Complaint, and in the substantive analysis in Plaintiff's opposition brief, the challenges are

to the denial of Plaintiff's license application — i.e., to the statutes and rules "as applied" — as opposed to general constitutional violations.  (Pl. Opp. 7-12).

As a result, Plaintiff's reliance on this exception to general principles of *res judicata* is misplaced, because he cannot credibly claim that he is bringing a facial challenge to the statutes.  And for all of the reasons set forth in this section, the Court must thus dismiss the Complaint as precluded.

## C.    Plaintiff's Claims Fail on the Merits

Alternatively, Defendants argue that each of Plaintiff's claims should be dismissed on the merits.  (*See* Def. Br. 7-21).  While the Court has already determined that the action is precluded, for the sake of completeness, and in deference to Plaintiff's *pro se* status, the Court addresses on the merits his claims for violations of (i) the Due Process Clause; (ii) the Second Amendment; and (iii) the Equal Protection Clause.  As set forth in the remainder of this section, separate and apart from the above-described procedural defects, the Court finds independent bases for dismissal of each of Plaintiff's claims on the merits.

### 1.    Plaintiff Has Not Stated a Procedural Due Process Violation

In his first claim, Plaintiff asserts that he was denied his right to procedural due process when the License Division denied his permit application.  (Compl. ¶¶ 50-56).  "A procedural due process claim is composed of two elements: [i] the existence of a property or liberty interest that was deprived and [ii] deprivation of that interest without due process."  *Bryant* v. *N.Y.S. Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  Defendants focus on the

first element, arguing that Plaintiff does not have a protected interest in his application for a gun license.  (Def. Br. 7-9).  As a result, Defendants argue, no process is due.  (*Id*.).  The Court agrees.

To establish a property interest in the license, Plaintiff must demonstrate that he has a "legitimate claim of entitlement" to that license, *Ace Partners, LLC* v. *Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir.), *cert. denied sub nom. Ace Partners, LLC* v. *Town of E. Hartford, Conn.*, 139 S. Ct. 122 (2018), and not merely  "an abstract need or desire for it," *see Bd. of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972).  Whether an applicant for a license has a legitimate claim of entitlement to the license depends on the "the degree of discretion enjoyed by the issuing authority." *RRI Realty Corp.* v. *Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989).  If the issuing authority lacks discretion to deny the permit and "there is either a certainty or a very strong likelihood that the application would have been granted," Plaintiff will have demonstrated a "legitimate claim of entitlement," and property interest in, the renewal of his license.  *Ace Partners*, 883 F.3d at 195.  Conversely, if the issuing authority exercises discretion in the renewal process, the granting of the renewal application is not a foregone conclusion, and no property interest exists in the license, thereby barring a procedural due process claim.  *See id*.

The relevant statute, NYPL § 400.00, vests the License Division with broad discretion in determining whether to deny a firearm permit.  *See Perros* v. *Cty. of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017).  Specifically, NYPL § 400.00(1), which sets forth the eligibility requirements for obtaining a

16

license, allows a licensing officer to "deny an application for any good cause." *Tuttle* v. *Cacace*, 81 N.Y.S.3d 195, 196 (2d Dep't 2018); *see also N.Y.S. Rifle & Pistol Ass'n, Inc.* v. *City of New York*, 883 F.3d 45, 52 (2d Cir. 2018) ("*NYSRPA II*") ("The licensing officers are vested with considerable discretion in deciding whether to grant a license application, particularly in determining whether proper cause exists for the issuance of a carry license."), *cert. granted sub nom. N.Y.S. Rifle & Pistol Ass'n, Inc.* v. *City of New York, N.Y.*, 139 S. Ct. 939 (2019). Accordingly, Plaintiff does not have a protected due property interest in a "business carry" handgun license. *See Toussaint* v. *City of New York*, No. 17 Civ. 5576 (NGG) (VMS), 2018 WL 4288637, at *7 (E.D.N.Y. Sept. 7, 2018) (finding no protected interest in a firearm license due to the licensing officer's "broad, significant discretion to deny an application").

Due to the fact that Plaintiff does not have a protected property interest in a "business carry" license — and therefore no process is due — the remainder of Plaintiff's briefing on the issue is moot. Plaintiff proceeds to argue that he was deprived of due process because the License Division failed to provide a "neutral official" to review his application. (Pl. Opp. 7-8). As alleged in the Complaint, DI Endall, who signed the letter rejecting Plaintiff's application, was removed from his position and transferred to "desk duty" two weeks after Plaintiff's application was rejected. (Compl. ¶¶ 31-32). According to Plaintiff, DI Endall was demoted after "several of his subordinates were caught by federal authorities accepting cash in exchange for, among other things, approval of pistol permit applications." (*Id.* at ¶ 32). Therefore, Plaintiff

17

argues, the state violated his due process rights because it is required "to provide neutral officials *whenever process is due*." (*Id.* at ¶ 52 (emphasis added)). As just explained, however, no process was due.[3] As a result, the Court dismisses Count One of the Complaint on the merits.

### 2. Plaintiff Has Not Stated a Second Amendment Violation

The heart of Plaintiff's Complaint involves two alleged violations of his Second Amendment rights. (Compl. ¶¶ 57-67). Plaintiff claims that both (i) the Application Questions, and (ii) the proper cause requirement, as applied to him, violate the Second Amendment. (*Id.*). In his opposition brief, Plaintiff also brings a facial challenge to the regulations. (Pl. Opp. 2-7).

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST, AMEND. II. The Supreme Court has held that the Second Amendment "codified a preexisting right" that includes an "individual right to possess and carry weapons in case of confrontation," *District of Columbia* v. *Heller*, 554 U.S. 570, 592 (2008), and

---

[3]     Even if Plaintiff possessed a cognizable property interest in a "business carry" license, the Article 78 proceeding provided Plaintiff with an adequate post-deprivation remedy such that no procedural due process violation occurred.  It is well settled that "where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate post-deprivation remedy."  *Grillo* v. *New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002).  Furthermore, Plaintiff does not claim that the Article 78 proceedings were inadequate.  (Pl. Br. 8 ("[Plaintiff's] due process claim does not challenge the Article 78 procedure.")).  *See G.I. Home Developing Corp.* v. *Weis*, 499 F. App'x 87, 90 (2d Cir. 2012) (summary order) (rejecting plaintiff's argument that Article 78 proceeding was inadequate "for lack of admissible evidence to support it").  Accordingly, and in the alternative, the Article 78 proceedings preclude Plaintiff's due process claim as a matter of law.

that the Second Amendment's protections apply fully to the states through the Fourteenth Amendment's Due Process Clause, *see McDonald* v. *City of Chicago*, 561 U.S. 742, 750 (2010). Post-*Heller*, the Second Circuit developed a two-step test to determine the constitutionality of firearm restrictions. *See N.Y.S. Rifle & Pistol Ass'n, Inc.* v. *Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("*NYSRPA I*"). *First*, the court must "consider whether the restriction burdens conduct protected by the Second Amendment." *Id.* *Second*, if the challenged restriction does implicate conduct "within the scope of the Second Amendment," then the court "must determine and apply the appropriate level of scrutiny." *Id.* For the reasons discussed below, the Court finds that Plaintiff has failed to allege a violation of his Second Amendment rights.

### a. The Proper Cause Requirement Is Constitutional Pursuant to *Kachalsky*

The proper cause requirement, which Plaintiff alleges is a "total ban" on firearm ownership (Compl. ¶ 64), has withstood identical constitutional challenges, *see Kachalsky*, 701 F.3d at 83. In *Kachalsky*, the Second Circuit directly addressed the issue and applied intermediate scrutiny to uphold New York's proper cause requirement. *See id.* at 99. Although Plaintiff recognizes "that this Court may be bound by circuit precedent" (Pl. Opp. 11), he argues that "the Second Circuit should modify *Kachalsky* to categorize New York's proper cause requirement as the total ban, or at least strict scrutiny-raising restriction, that it is" (*id.* at 10-11).

In support of his argument, Plaintiff directs the Court's attention to case law from the Ninth, Seventh, and D.C. Circuits. (Pl. Opp. 9-10). Those circuits, Plaintiff claims, have "[struck] down nearly identical 'proper cause' requirements." (*Id.* at 9). However, this Court is bound by *Kachalsky*, which is still good law in this Circuit. Indeed, in 2018, the Second Circuit, "aware that a divided panel of the Seventh Circuit and a divided panel of the District of Columbia Circuit [] disagreed with *Kachalsky*," gave "careful and respectful attention to the reasoning of those opinions," before ultimately reaffirming its prior holding. *See NYSRPA II*, 883 F.3d at 57. For that reason, the Court dismisses Count Three of the Complaint on the merits.

### b.  The Application Questions Do Not Violate Plaintiff's Second Amendment Rights

Next, the Court addresses Plaintiff's claim that the Application Questions violated his Second Amendment rights. (Compl. ¶¶ 57-61). To review, the Application Questions asked whether Plaintiff had ever been fired from a job, used narcotics or tranquilizers, or given sworn testimony. (*Id.* at ¶ 29).

Applying the Second Circuit's two-part test, the Court would ordinarily first determine whether the Application Questions impinge on conduct protected by the Second Amendment, before applying the appropriate level of scrutiny. *See NYSRPA I*, 804 F.3d at 254. The Court need not decide the first issue, however, "because, as explained below, the [Application Questions] pass constitutional muster under intermediate scrutiny." *NYSRPA II*, 883 F.3d at 55. Therefore, as in *NYSRPA II*, the Court "proceed[s] on the assumption that

[the Application Questions restrict activity] protected by the Second Amendment." *Id.*

The Court's analysis hinges on whether heightened scrutiny applies. The Court determines whether strict or intermediate scrutiny applies by considering two factors: "[i] how close the law comes to the core of the Second Amendment right and [ii] the severity of the law's burden on the right." *NYSRPA II*, 883 F.3d at 56. Laws that "limit [the] lawful use of [] weapons in defense of hearth and home, the core protection of the Second Amendment," *id.* at 57, may merit intermediate scrutiny, but not strict scrutiny, if they do "not impose a substantial burden on the [] Second Amendment right," *Kachalsky*, 701 F.3d at 93. Conversely, laws "that neither implicate the core protections of the Second Amendment nor substantially burden their exercise do not receive heightened scrutiny." *NYSRPA II*, 883 F.3d at 56.

Plaintiff urges the Court to apply intermediate scrutiny when evaluating the Application Questions. (Compl. ¶ 58). The Court agrees that the Application Questions do not trigger strict scrutiny, as the questions do not substantially burden Plaintiff's Second Amendment rights. Plaintiff is merely required to answer three questions, as part of a larger, more comprehensive application process. Complying with a requirement to complete a minimally invasive questionnaire — for the limited purpose of shaping a background investigation — is no more than a "marginal, incremental or even appreciable restraint on the right to keep and bear arms." *United States* v. *Decastro*, 682

F.3d 160, 166 (2d Cir. 2012).  Accordingly, the Court applies intermediate scrutiny.

To survive intermediate scrutiny in the Second Amendment context, the challenged regulation must be "substantially related to the achievement of an important governmental interest."  *Kachalsky*, 701 F.3d at 96.  The parties do not dispute that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention."  *Id.* at 97.  The NYPD has a strong interest "in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument."  *Pelose* v. *Cty. Court of Westchester Cty.*, 384 N.Y.S.2d 499, 500 (2d Dep't 1976).

Here, the Application Questions regarding employment history, drug use, and prior sworn testimony are substantially related to that significant governmental interest because they help shape the scope and direction of the background investigation.  (*See* Def. Br. 15).  For example, if an applicant has a history of drug abuse, the background investigation may focus on possible side effects, drug interactions, or addictions.  An applicant's prior sworn testimony can help the investigator learn important information about the applicant's background.  Similarly, if an applicant has been fired from a large number of jobs, this pattern may be a red flag for an investigator to look more closely into the applicant's mental health.

The NYPD's assessment that each of the Application Questions is substantially related to the background check, and therefore the government's interest in public safety, is due considerable deference. *See Kachalsky*, 701 F.3d at 98 ("New York's law need only be *substantially related* to the state's important public safety interest. A perfect fit between the means and the governmental objective is not required." (emphasis in original)). The Court finds that the Application Questions satisfy intermediate scrutiny, and accordingly, dismisses Count Two of the Complaint on the merits.

### 3. Plaintiff Has Not Stated an Equal Protection Violation

Finally, Plaintiff brings an equal protection claim. (Am. Compl. ¶¶ 68-71). The Equal Protection Clause of the Fourteenth Amendment is a mandate that all similarly-situated individuals be treated alike. *See City of Cleburne* v. *Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Artec Constr. & Dev. Corp.* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15 Civ. 9494 (KPF), 2017 WL 782911, at *2 (S.D.N.Y. Feb. 27, 2017) (quoting *Harlen Assocs.* v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)); . An individual may assert either a "class of one" or "selective enforcement" equal protection claim. *Id.*

Plaintiff rests his claim on a "class of one" theory. (Am. Compl. ¶¶ 68-71). To proceed under this theory, Plaintiff must "show an extremely high degree of similarity between [himself] and [his] comparators." *Fortress Bible Church* v. *Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). As the Second Circuit recently clarified in *Hu* v. *City of New York*, Plaintiff "must establish that he and a comparator are '*prima facie* identical' by showing that '(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" No. 18-737-cv, 2019 WL 2454846, at *6 (2d Cir. June 13, 2019). Post-*Iqbal*, a complaint must make sufficient factual allegations in support of this similarity requirement in order to survive a motion to dismiss an Equal Protection claim. *See Ruston* v. *Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). Courts require "more than a bare allegation that other individuals were treated differently." *Vaher* v. *Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013).

The crux of Plaintiff's allegations is that the License Division has established a practice of automatically finding "proper cause" for any retired police officer who has a "good guy letter." (Compl. ¶ 68; Pl. Opp. 11-12). A "good guy letter" refers to a letter that the NYPD issues certifying, in effect, that a retired police officer is in good standing. (Def. Br. 20 n.8). Although retired police officers are subject to the same regulations and must also demonstrate

24

"proper cause" prior to receiving a license, NYPL § 400.01(1), Plaintiff claims that licensing officials ignore the NYPL and freely issue firearm licenses to retired officers. (Compl. ¶ 68; Pl. Opp. 11-12). As a result, retired officers completely "bypass" the "proper cause" requirement. (Compl. ¶ 69).

The Complaint's allegations are too conclusory to satisfy *Twombly's* plausibility standard. Plaintiff has not alleged that there is a "high degree of similarity" between himself and the retired police officers referenced in the Complaint, and, indeed, the Court is skeptical that he could. Nor has he sufficiently alleged the absence of a rational basis for the alleged difference in treatment, aside from asserting that "[r]etired police have no more 'need' to carry a firearm than other civilians." (Compl. ¶ 71). With nothing more than these conclusory allegations, Plaintiff's equal protection claim cannot survive a motion to dismiss. *See Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (explaining that to survive a motion to dismiss, a pleading must do more than assert "a formulaic recitation of the elements of a cause of action" (quoting *Twombly*, 550 U.S. at 545)). Accordingly, the Court dismisses Count Four on the merits.[4]

---

[4]     Plaintiff argues in his opposition brief that he is bringing a facial challenge to New York's gun licensing laws. (Pl. Opp. 2-7). As discussed *supra*, the Court disagrees. However, out of an abundance of caution, the Court notes that, due to the fact that the challenged regulations are constitutional as applied to Plaintiff, his facial challenge necessarily fails. *See Kachalsky* v. *Cty. of Westchester*, 701 F.3d 81, 101 (2d Cir. 2012). To succeed on a facial challenge, Plaintiff must establish that no set of circumstances exist under which the challenged regulation would be valid, including as applied to himself. *See N.Y.S. Rifle & Pistol Ass'n, Inc.* v. *Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) ("*NYSRPA I*"). Accordingly, Plaintiff's facial challenge is dismissed.

**D.     The Court Denies Plaintiff's Request for Leave to File an Amended Complaint**

Because Defendants' motion to dismiss is granted in its entirety, the remaining question is whether Plaintiff is entitled to amend his Complaint.  In a single footnote at the end of his opposition brief, Plaintiff states "[t]o the extent that the Court grants Defendants' motion as to Counts 1, 2, or 4, [Plaintiff] respectfully requests that the Court couple that order with leave to file an amended complaint."  (Pl. Opp. 13 n.4).  The rule in this Circuit is that leave to amend is often granted absent a showing by the non-movant of prejudice or bad faith.  *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am.*, *N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).  However, where a plaintiff has not made an adequate showing to support his request to replead, a court may, in its discretion, deny leave to amend.  *See, e.g., In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C.* v. *Actavis, Inc.*, 570 U.S. 136 (2013).

At the pre-motion conference, the Court asked Plaintiff if he had an interest in amending his pleading, with the aim of avoiding needless motion practice.  (Tr. 16:06-07).  Plaintiff stated that he did not want to amend his pleading prior to reviewing Defendants' motion.  (*Id.* at 16:08-19).  That was of course his prerogative, but even now, Plaintiff does not specify how he would amend his pleadings to account for the deficiencies identified in this Opinion. The Second Circuit has suggested that leave to amend may be denied on this basis.  *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d at 220-21; *see also*

*TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify ... how amendment would cure the pleading deficiencies in its complaint."). Put somewhat differently, because Plaintiff has not indicated the manner in which he would amend his pleadings to state his claims adequately, and because the Court's independent analysis discloses none, the Court finds that granting leave to amend would be futile. *See In re World Com, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004). Plaintiff's request is therefore denied.

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: June 17, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge